UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alia D.,[1]

     Plaintiff,         Case No.  21-cv-366 (MJD/LIB)

  v.             **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

     Defendant.

Plaintiff, Alia D. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 26, 29], and the Court took the matter under advisement on the written submissions pursuant to the Local Rules for this District governing motions filed in Social Security cases.

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 26], be **DENIED**, and Defendant's Motion for Summary Judgment, [Docket No. 29], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On June 29, 2017, Plaintiff filed a Title II application for a period of disability and disability benefits, as well as, a Title XVI application for supplemental security income. (Tr. 22).[2] Plaintiff alleged that her disability began on December 18, 2013. (Tr. 22). The Commissioner initially denied Plaintiff's present claims on October 3, 2017, and again, upon reconsideration, on November 16, 2017. (Tr. 22). On January 12, 2018, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 22).

Administrative Law Judge Erin Schmidt (hereinafter "ALJ") conducted a hearing on May 29, 2019. (Tr. 22). At the administrative hearing, Plaintiff was represented by a "non-attorney representative." (Tr. 22). Plaintiff and an independent vocational expert, Kenneth E. Ogren, ("IVE Ogren") testified at the hearing. (Tr. 22).

On June 18, 2019, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 19–40). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 40).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 8–16). Subsequently, on February 7, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 9). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On February 8, 2021, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 26, 29],

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 22], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 71 exhibits spanning over 1610 pages. (See, Administrative Record [Docket No. 22]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

and the Court took the matter under advisement on the written submissions pursuant to the Local

Rules for this District governing motions filed in Social Security cases.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request

reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied

with the reconsidered decision may then obtain administrative review by an administrative law

judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a

five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings

regarding the claimant's impairments, residual functional capacity, age, education, and work

experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968

F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is
> presently engaged in a substantial gainful activity; (2) whether the claimant has a
> severe impairment that significantly limits the claimant's physical or mental
> ability to perform basic work activities; (3) whether the claimant has an
> impairment that meets or equals a presumptively disabling impairment listed in
> the regulations; (4) whether the claimant has the residual functional capacity to
> perform his or her past relevant work; and (5) if the claimant cannot perform the
> past work, the burden shifts to the Commissioner to prove that there are other jobs
> in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the

Appeals Council, although the Appeals Council need not grant that request for review. See, 20

C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is

denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 8–16), thus making the ALJ's decision the final decision of the Commissioner.

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to

support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision through the ALJ, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity (hereinafter "RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### III. Decision Under Review

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2018. (Tr. 24). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since December 18, 2013, Plaintiff's alleged disability onset date. (Tr. 24). This finding is not in dispute. The Court will refer to the period of time between that date Plaintiff last engaged in substantial gainful activity and the date through which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: borderline personality disorder; major depressive disorder; and attention deficit hyperactivity disorder." (Tr. 25). Plaintiff does not challenge this finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have a presumptively disabling impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 12.02, 12.04, or 12.08. (Tr. 28–29). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[T]he claimant has the residual functional capacity to perform a range of work at all levels of exertion, but is limited to simple, routine, and repetitive tasks; simple work-related decisions and routine workplace changes; and occasional interaction with coworkers, supervisors, and the general public.

(Tr. 29). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that "while the [Plaintiff's] medically determinable impairments reasonably could be expected to cause the alleged symptoms," Plaintiff's "allegations, concerning the intensity, persistence, and

functionally limiting effects of the symptoms experienced since the alleged onset date, December 18, 2013, are not generally consistent with the evidence overall, including treating medical [records] and other records prepared since that date." (Tr. 30). Plaintiff challenges this credibility finding by the ALJ.

Based on her determination regarding Plaintiff's RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a packaging machine operator. (Tr. 39). Plaintiff does not directly challenge the ALJ's findings here, other than as an implicit derivative challenge based on Plaintiff's other aforementioned challenges.

The ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 40).

## IV. Analysis

Plaintiff asserts three overarching issues on her appeal of the ALJ's decision. Plaintiff first argues that the ALJ failed to "properly evaluate" certain medical opinions in the record. (Plf.'s Mem. [Docket No. 27] at 1, 4–21). Second, Plaintiff contends that the ALJ's credibility assessment of Plaintiff was defective. (Id. at 21–23). Third, Plaintiff, throughout her memorandum, makes generalized assertions suggesting that the ALJ's overall decision is unsupported by substantial evidence. (See, Id.).

The Commissioner contends that she is entitled to summary judgment, arguing that each of Plaintiff's arguments is unavailing, and that the ALJ's opinion is supported by substantial evidence in the record as a whole. (Def.'s Mem. [Docket No. 30]).

### A. Medical Opinion Evidence

As observed above, Plaintiff first argues that the ALJ failed to "properly evaluate" certain medical opinions in the record. (Plf.'s Mem. [Docket No. 27] at 1, 4–21). Specifically, Plaintiff

takes issue with the ALJ's evaluation of the October 12, 2017, medical opinion of Lindsey Werner, LICSW; the November 11, 2017, opinion of Rashelle Anderson, M.A.; the October 26, 2018, opinion of Kathlyn Bergeron, APRN-CNP; and the opinions of the State Agency Consultants. (Id. at 6–21).

Although Plaintiff characterizes her argument as asserting the ALJ failed to "properly evaluate" the above medical opinions, in support of this argument, Plaintiff merely summarizes those portions of the evidence from the record which she believes is supportive and consistent with the selected medical opinions and which she believes could support a finding of disability. (See, Id.). For example, Plaintiff asserts that the ALJ's consideration of the record was highly selective; however, in support of that assertion, Plaintiff merely selectively summarizes portions of the evidence from the record which she believes is supportive of the selected medical opinions. (See, Id.). Plaintiff merely highlights portions of the record which she believes support her position; however, these are the same records to which the ALJ cited and considered. (See, e.g., Tr. 29–39).

Illustrative of this point is Plaintiff's assertion that the ALJ, in her consideration of the medical opinions, allegedly failed "to acknowledge or discuss a single abnormal finding" from Plaintiff's medical records. (See, Plf.'s Mem. [Docket No. 27] at 13–14).[3] This assertion is not factually supported by the record now before the Court. Instead, the record as a whole demonstrates that the ALJ provided a thorough discussion of Plaintiff's extensive medical records in which she specifically cited to the very records Plaintiff now highlights. (Tr. 25–27,

---

[3] Plaintiff reference to purportedly "abnormal findings" refers to any instance in which it was observed that Plaintiff was in an irritable, depressed, frustrated, distracted, tearful, impulsive, defensive, argumentative, anxious, volatile, agitated, restless, or unmotivated mood; presented with poor short-term or scattered memory; had a disheveled appearance; had impaired attention and concentration; was hyperactive; or had an agitated affect. (Id. at 13 n. 9).

31–39). The ALJ considered and discussed the records which Plaintiff now highlights, but she found those records to be "largely unremarkable." (See, e.g., Tr. 33).

To the extent Plaintiff also argues that the ALJ erred because she failed to specifically discuss specific portions of a document, (Plf.'s Mem. [Docket No. 27] at 13–14), even where the ALJ did discuss the document as a whole, the Court finds this argument to be unpersuasive. An ALJ is not, as Plaintiff here implicitly argues, required to set forth a piece-by-piece analysis of each and every piece of evidence in the record. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citing Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993)). Further, the Eighth Circuit has held that the mere fact that an ALJ failed to mention some specific evidence does not necessarily indicate that the ALJ failed to consider that evidence. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citing Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995)). Despite Plaintiff's argument that the ALJ considered only a selective portion of the record, the record now before the Court makes evident that the ALJ considered the record as a whole, including the portions of the record Plaintiff now seeks to highlight. (See, e.g., Tr. 25, 31–39, 349, 355, 374–75, 464, 513, 623, 671, 863, 1045, 1371–72, 1432) (demonstrating evidence cited to and discussed by the ALJ which is within the same portions of the record as those specific citations to the record highlighted by Plaintiff).

Plaintiff's discussion of PHQ-9 scores[4] is also illustrative of the point that Plaintiff's argument merely asks the Court to reweigh the evidence already considered by the ALJ. (See,

---

[4] "PHQ-9 is a self-administered patient questionnaire . . . . PHQ-9 scores range from 0 to 27 with a score of 10-14 indicating moderate depression, 15-19 [indicating] moderately severe depression, and 20 and above indicating severe depression." John B. H. v. Saul, No. 4:20-cv-04080 (VLD), 2021 WL 1192930, at *9 n.5 (D.S.D. Mar. 30, 2021); Mapson v. Colvin, No. 14-cv-1257 (SRN/BRT), 2015 WL 5313498, at *27 (D. Minn. Sept. 11, 2015); Sheila A. v. Berryhill, No. 17-cv-2161 (HB), 2018 WL 4572982, at *4 (D. Minn. Sept. 24, 2018), aff'd sub nom. Anderson v. Comm'r of Soc. Sec. Admin., 802 F. App'x 228 (8th Cir. 2020).

Plf.'s Mem. [Docket No. 27] at 13–15). Plaintiff contends that the ALJ in her consideration of the at issue medical opinions failed to acknowledge Plaintiff's "highest recorded PHQ-9 score of 20," as well as, Plaintiff's second highest score of 18. (Id. at 14–15). As a threshold issue, Plaintiff's assertion regarding the PHQ-9 score of 18 is contradicted by the factual record now before the Court. In her discussion of Plaintiff's PHQ-9 scores, the ALJ specifically mentioned Plaintiff's score of 18 which was recorded in September 2016. (Tr. 31). Furthermore, several times throughout her decision, the ALJ discussed treatment notes containing the PHQ-9 score of 18. (Tr. 33–37, 484, 660, 685, 882, 1398, 1409, 1418, 1423, 1432, 1482, 1550, 1554, 1574). The record now before the Court makes evident that the ALJ was aware and did consider Plaintiff's PHQ-9 score of 18.

The ALJ also specifically discussed the treatment notes from the course of treatment during which Plaintiff received the PHQ-9 score of 20. (See, Tr. 31). Although the ALJ did not specifically mention the PHQ-9 score of 20, the ALJ discussed the medical personnel's observations of Plaintiff during the specific visit when Plaintiff received the PHQ-9 score of 20, as well as, Plaintiff's other PHQ-9 scores during that course of treatment.

Here again, Plaintiff appears to implicitly argue that the ALJ erred because she failed to specifically mention the PHQ-9 score of 20 even though the ALJ discussed the document as a whole. The Court again finds this argument to be unpersuasive. As the Court has already noted, an ALJ is not, as Plaintiff here implicitly argues, required to set forth a line-by-line analysis of each and every piece of evidence in the record. Renstrom, 680 F.3d at 1065; Craig, 212 F.3d at 436; Black, 143 F.3d at 386. An ALJ's failure to mention a specific piece of evidence, such as the PHQ-9 score of 20 in the present case, does not per se indicate that the ALJ failed to consider that evidence. Black, 143 F.3d at 386; Montgomery, 69 F.3d at 275. Instead, the record now

10

before the Court makes clear that the ALJ considered the record as a whole, including Plaintiff's self-administered PHQ-9 score of 20. (See, e.g., Tr. 31, 355) (demonstrating the sole PHQ-9 score of 20 in the record and the ALJ's discussion of the contents of the document containing said score)

Other factors also subtract from the persuasiveness of Plaintiff's argument related to her PHQ-9 scores. Notably, a PHQ-9 score is not a medical opinion which an ALJ is required to specifically discuss. See, e.g., Mapson v. Colvin, No. 14-cv-1257 (SRN/BRT), 2015 WL 5313498, at *27 (D. Minn. Sept. 11, 2015); Sheila A. v. Berryhill, No. 17-cv-2161 (HB), 2018 WL 4572982, at *4 (D. Minn. Sept. 24, 2018), aff'd sub nom. Anderson v. Comm'r of Soc. Sec. Admin., 802 F. App'x 228 (8th Cir. 2020). "As a self-administered exam, the PHQ–9 exam does not constitute a medical opinion which the ALJ must explicitly discuss." Mapson, 2015 WL 5313498, at *27; see, Sheila A., 2018 WL 4572982, at *4. Plaintiff's argument related to PHQ-9 scores also ignores the ALJ's thorough discussion of Plaintiff's PHQ-9 scores which demonstrate a trend in a range far below 20, and a trend which, as the ALJ noted, is inconsistent with the allegedly debilitating nature of Plaintiff's complaints.

To the extent that Plaintiff argues that there was substantial evidence in the record that might also have supported the selected medical opinions, the Court may not reverse the ALJ simply because substantial evidence may support an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted)

(emphasis added). Such is the present case now before the Court. Plaintiff merely highlights selective evidence favorable to her position, and she asks this Court to reevaluate said evidence to reach a conclusion different than the one reached by the ALJ when she considered the same record. This the Court cannot do. See, Milam, 794 F.3d at 983.

Moreover, even if Plaintiff had presented a proper challenge to the ALJ's evaluation of the medical opinions, the Court's review of the records finds that the ALJ's determinations regarding the at issue medical opinions are supported by substantial evidence.

### 1. Lindsey Werner, LICSW

On October 12, 2017, Lindsey Werner, LICSW, a licensed psychotherapist, who was treating Plaintiff at the time, completed a Mental Medical Source Statement. (Tr. 847–850). In her October 12, 2017, Mental Medical Source Statement, LICSW Werner checked the boxes indicating that she opined that Plaintiff had "extreme" limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, as well as, her ability to tolerate normal levels of stress. (Tr. 848). LICSW Werner further opined that Plaintiff had between "marked" and "extreme" limitations in her ability to carry out instructions; maintain attention and concentration for more than two-hour segments; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and sustain an ordinary routine without special supervision. (Tr. 848). LICSW Werner also opined that Plaintiff had moderate limitations in her ability to carry out very short and simple instructions. (Tr. 848). On the Mental Medical Source Statement form, LICSW Werner wrote that she completed the Mental Medical Source Statement with Plaintiff's assistance because LICSW Werner was "unsure of work environment specifics—only speaking to [Plaintiff's] behavior as witnessed [in] therapy." (Tr. 848). LICSW Werner further opined that Plaintiff had a "minimal

capacity to adapt to changes in the environment or demands that are not already part of [her] daily life." (Tr. 849). When asked to identify any additional limitations which would interfere with Plaintiff's ability to sustain competitive employment, LICSW Werner wrote that "work life is difficult to assess as [she] ha[s] not known [Plaintiff] while in work." (Tr. 849). When asked if her opined limitations had been present since December 18, 2013, LICSW Werner wrote that she was "unsure" because she could only "go off" Plaintiff's reported history. (Tr. 850).

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See, 20 C.F.R. § 404.1520c(a). Because Plaintiff filed her application for disability benefits on June 29, 2017, the new regulations apply here. See, Id.

The new regulations eliminate the long-standing "treating physician" rule. Id.; see, Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *9 n.3 (D. Minn. Oct. 17, 2019) ("On March 27, 2017, the Social Security Administration rescinded the Treating Physician Rule with respect to social security disability [claims] filed after the date of publication."). Under the new regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ evaluates the persuasiveness of any medical opinion by considering the following five factors: (1) supportability;[5] (2) consistency;[6] (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c).

---

[5] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(1).

[6] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(2).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how these two factors were considered. Id. The ALJ may also, but is not required to, explain how the remaining factors were considered. Id. However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [she] considered the other" enumerated factors "for those medical opinions or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b)(3).

In the present case, the ALJ discussed the relevant portions of LICSW Werner's October 12, 2017, opinion, and she acknowledged that LICSW Werner was Plaintiff's psychotherapist. (Tr. 38). The ALJ found LICSW Werner's October 12, 2017, opinion to be "not persuasive to the extent" it is "not supported by the administrative record taken as a whole, including the [Plaintiff's] largely benign clinical findings across multiple mental status examinations and her overall conservative course of outpatient mental health treatment." (Tr. 38).

The ALJ did not find LICSW Werner's opinion to be as equally well-supported as any other opinion. (Tr. 38–39). To the contrary, the ALJ clearly found that, each of the at issue medical opinions, including LICSW Werner's October 12, 2017, opinion, was unsupported by the record. (Tr. 38–39).

The ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ discussed both the supportability and consistency factors with regards to the October 12, 2017, opinion of LICSW Werner. The ALJ specifically noted that LICSW Werner's opinion was not supported by the record, and LICSW Werner's opinion is likewise inconsistent with evidence

highlighted by the ALJ, including Plaintiff's "largely benign clinical findings across multiple mental status examination and her overall conservative course of outpatient mental health treatment." Referencing and discussing specific portions of the record throughout her decision and summarizing those discussions in relation to LICSW Werner's October 12, 2017, opinion, the ALJ found that LICSW Werner's October 12, 2017, opinion was "not supported by the administrative record taken as a whole, including the [Plaintiff's] largely benign clinical findings across multiple mental status examinations and her overall conservative course of outpatient mental health treatment." (Tr. 38). The ALJ's findings here are well-supported in the record.

For example, as noted by the ALJ, for nearly two years following her alleged onset date of December 18, 2013, Plaintiff sought "very little treatment," other than  routine outpatient psychotropic medicine management. (Tr. 31, 380–396, 1155–1197). During this almost two-year period of limited treatment, the Washington County ARMHS worker assigned to Plaintiff's case repeatedly noted that Plaintiff described her mental health in terms of "good," "okay," and "better." (Tr. 1167–1169, 1171, 1179 –1182, 1184–1186, 1189). In addition, during the early part of this time period, Plaintiff declined to schedule certain mental health appointments despite the repeated recommendation to do so by her Washington County ARMHS worker. (See, Tr. 1155–1177). When Plaintiff did eventually schedule said appointments and was compliant with her prescribed medications, she often reported improvement in her mental health. (See, e.g., Tr. 380, 381, 382, 386, 389, 393, 396). There are, however, indications during this period that Plaintiff was not compliant with her prescribed medications due to either her stopping said medications or her unilaterally reducing her dosage. (See, Tr. 395).

In addition, the ALJ noted that even after Plaintiff began meeting with an adult rehabilitative mental health services worker, Plaintiff continued her conservative course of

treatment without seeking treatment with a therapist until September 2016. (See, Tr. 686). Before September 2016, Plaintiff managed her symptoms with only medicine and assistance through the ARMHS program, including ARMHS home assessments and meeting with an adult rehabilitative mental health worker. (See, 344–396, 686–846, 1155–1254).

A conservative treatment plan is evidence that a claimant's symptoms are not as severe as alleged. See, e.g., Hamman v. Berryhill, 680 F. App'x 493, 495 (8th Cir. 2017); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Bauer v. Soc. Sec. Admin., 734 F. Supp. 2d 773, 806 (D. Minn. 2010); LaCanne v. Massanari, No. 00-cv-2339 (ADM/JMM), 2001 WL 1640124, at *2 (D. Minn. July 30, 2001). Likewise, "a claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion, and therefore can be considered in determining" the persuasiveness of said medical opinion. Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); see, Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004); Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (quoting Guillias v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005)). Moreover, "[a]n impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); see, Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014). Here, Plaintiff's conservative course of treatment, her failure to adhere to recommended medications, and her declining of recommended treatment undermines the persuasiveness of LICSW Werner's October 12, 2017, opinion. In other words, Plaintiff's conservative course of treatment and failure to adhere to recommended treatment indicates a level of debilitation less than the high level of functional limitations opined to by LICSW Werner.

The ALJ also noted that Plaintiff's clinical findings were largely benign in contrast to the debilitating nature of LICSW Werner's October 12, 2017, opinion. (Tr. 38; see, Tr. 442–846). In

addition to the above discussion regarding the conservative nature of Plaintiff's course of treatment, Plaintiff's therapy sessions with LICSW Werner were also largely benign. For example, at the overwhelming majority of her therapy appointments, including her appointments with LICSW Werner, Plaintiff was observed to be oriented with a normal mood and an affect that was described as "appropriate/normal." (See, e.g., Tr. 446, 454, 461, 464, 468, 472, 478, 485, 489, 494, 496, 504, 532, 534, 538, 540, 547, 548, 552, 554, 559, 561, 568, 569, 571, 573, 575, 577, 582, 586, 589, 591, 600, 891, 904). During this same time, Plaintiff was repeatedly observed to be alert during her appointments. (Tr. 571, 573, 574, 575). She was also described as, or reported herself as, being in a "good" or "pleasant" mood. (Tr. 563, 569, 573).

LICSW Werner's October 12, 2017, opinion fails to provide any explanation as to the contradiction between the benign nature of her treatment notes and the debilitating nature of her October 12, 2017, opinion. (See, Tr. 847–850). In fact, LICSW Werner's October 12, 2017, opinion was rendered on a check-box form in which she noted she that she completed the form with Plaintiff's assistance because LICSW Werner was "unsure" of the effect Plaintiff's alleged limitations would have on Plaintiff's abilities in a work environment. (Tr. 848).

An ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes.") (quotation omitted); Grindley v. Kijakazi, 9 F.4th 622, 632 (8th Cir. 2021); Kraus v. Saul, 988 F.3d 1019, 1025 (8th Cir. 2021). "Indeed, [a] treating physician's" or psychotherapist's "opinion deserves no greater respect than any other" medical "opinion when [it] consists of nothing more than

17

vague, conclusory statements." <u>Wildman v. Astrue</u>, 596 F.3d 959, 967 (8th Cir. 2010) (alteration in original) (quoting <u>Piepgras v. Chater</u>, 76 F.3d 233, 236 (8th Cir. 1996)).

LICSW Werner's opinion is entirely conclusory. (<u>See</u>, Tr. 847–850). A review of the opinion itself shows that it "consist[s] of nothing more than vague, conclusory statements— checked boxes, circled answers, and brief fill-in-the-blank responses. [It] cite[s] no medical evidence and provide[s] little to no elaboration, and so [it] possess[es] 'little evidentiary value.'" <u>Thomas v. Berryhill</u>, 881 F.3d 672, 675 (8th Cir. 2018) (quoting <u>Toland v. Colvin</u>, 761 F.3d 931, 937 (8th Cir. 2014)); <u>see</u>, <u>Wildman</u>, 596 F.3d at 967; <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 721 (8th Cir. 2001).

Moreover, LICSW Werner's opinion appears to be based, in large part, merely on Plaintiff's subjective reports because LICSW Werner twice specifically provides that she was relying upon Plaintiff's subjective reports to complete the check-box form. (Tr. 848, 850). This further undermines the persuasiveness and evidentiary value of LICSW Werner's October 12, 2017, opinion. <u>See, e.g.</u>, <u>Brian v. Saul</u>, No. 18-cv-1893 (HB), 2019 WL 4082948, at *9 (D. Minn. Aug. 29, 2019) (citing <u>Kirby</u>, 500 F.3d at 709) ("[I]t is permissible for an ALJ to discredit opinions that are premised on a claimant's own subjective complaints in the absence of objective findings.").

Therefore, this Court finds that the ALJ's decision that LICSW Werner's October 12, 2017, opinion was "not persuasive" was supported by substantial evidence in the record as a whole, including LICSW Werner's own treatment notes.

### 2. Rashelle Anderson, M.A.

On November 11, 2017, Rashelle Anderson, M.A., who had been having weekly sessions with Plaintiff as part of the ARMHS program, completed a Mental Medical Source Statement.

(Tr. 915–918). In her November 11, 2017, Mental Medical Source Statement, Ms. Anderson checked the boxes indicating she opined that Plaintiff had "extreme" limitations in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 916). Ms. Anderson also opined that Plaintiff had "marked" limitations in her ability to maintain attention and concentration for more than two-hour segments; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with, or proximity to, other without being distracted by them; complete a normal work day and work week, without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; set realistic goals or make plans independently of others; and tolerate normal levels of stress. (Tr. 916). Ms. Anderson posited that Plaintiff had "moderate" limitations in her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out very short and simple instructions; carry out detailed instructions; make simple work related decisions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. (Tr. 916). On the Mental Medical Source Statement form, Ms. Anderson wrote that Plaintiff "seems to be able to be able to sustain attention for possibly 20-25 min[utes] at a time." (Tr. 917). When asked if Plaintiff would have "good" and "bad" days, Ms. Anderson selected "No," and she wrote that Plaintiff "always has bad days." (Tr. 917). Ms. Anderson also

indicated that Plaintiff had a minimal capacity to adapt to changes in the environment or demands that are not already part of her daily life. (Tr. 917).

In her decision, the ALJ discussed the relevant portions of Ms. Anderson's November 11, 2017, opinion, but the ALJ found said opinion to be "not persuasive." (Tr. 39). The ALJ here did not find Ms. Anderson's November 11, 2017, opinions was as equally well-supported as any other opinion in the record. (Tr. 38–39). To the contrary, the ALJ clearly found that, each of the at issue medical opinions, including Ms. Anderson's opinion, was unsupported by the record. (Tr. 38–39). Because the ALJ did not find that multiple opinions were equally well-supported, the ALJ is required to explain only how the supportability and consistency factors were considered regarding Ms. Anderson's November 11, 2017, opinion. 20 C.F.R. § 404.1520c. On the record now before the Court, the ALJ sufficiently discussed the supportability and consistency factors.

Referencing and discussing specific portions of the record throughout her decision and summarizing those discussion in relation to Ms. Anderson's November 11, 2017, opinion, the ALJ found that Ms. Anderson's November 11, 2017, opinion was "not supported by the [Plaintiff's] largely unremarkable clinical findings across multiple mental status examinations, the overall conservative course of outpatient treatment, and the [Plaintiff's] own reports of functioning as reflected in multiple PHQ-9 scores." (Tr. 39). Ms. Anderson's opinion is likewise inconsistent with this same evidence. The ALJ's findings here are well-supported in the record.

The examples already discussed above regarding LICSW Werner's opinion are equally applicable here to Ms. Anderson's opinion. For example, as noted by the ALJ, before September 2016, Plaintiff managed her symptoms with only medicine and assistance through ARMHS program, including ARMHS home assessments and meeting with an adult rehabilitative mental

health worker—Ms. Anderson. (See, 344–396, 686–846, 1155–1254). During this almost two-year period of limited treatment, Plaintiff described her mental health in terms of "good," "okay," and "better." (Tr. 1167–1169, 1171, 1179 –1182, 1184–1186, 1189). Although Plaintiff declined to scheduled certain recommended mental health appointments, when Plaintiff was compliant with her prescribed medications, she often reported improvement in her mental health. (See, e.g., Tr. 380, 381, 382, 386, 389, 393, 396). All of this previously discussed evidence is inconsistent with the highly debilitating nature of Ms. Anderson's November 11, 2017, opinion.

For all the reasons already discussed above in relation to LICSW Werner's opinion, Plaintiff's conservative course of treatment and her failure to adhere to recommended medications and treatment undermines the persuasiveness of Ms. Anderson's November 11, 2017, opinion. See, e.g., Hamman, 680 F. App'x at 495; Milam, 794 F.3d at 985; Bauer, 734 F. Supp. 2d at 806; LaCanne, 2001 WL 1640124, at *2; Wagner, 499 F.3d at 851; Guillias, 393 F.3d at 802; Wildman, 596 F.3d at 964; Owen, 551 F.3d at 800; Kelley, 372 F.3d at 961; Estes v. Barnhart, 275 F.3d at 725; Turpin, 750 F.3d at 993. In other words, Plaintiff's conservative course of treatment and failure to adhere to recommended treatment indicates a level of debilitation less than the high level of functional limitations opined by Ms. Anderson.

The ALJ also noted that Plaintiff's clinical findings were largely "unremarkable" in contrast to the debilitating nature of Ms. Anderson's November 11, 2017, opinion. (Tr. 39). In addition to the above discussion regarding the conservative nature of Plaintiff's overall course of treatment, Ms. Anderson's own notes are also largely "unremarkable." For example, at nearly every one of Ms. Anderson's meetings with Plaintiff, Ms. Anderson observed that Plaintiff was alert and oriented. (See, e.g., 442, 444, 450, 451, 466, 479, 491, 498, 500, 502, 508, 510, 522, 526, 528, 530, 532, 536, 550, 559, 569, 571, 573, 575, 577, 612, 666, 704, 763, 897). Ms.

Anderson observed Plaintiff to be in a "good" or "pleasant" mood at several of their meetings. (See, e.g., Tr. 491, 500, 506, 524, 563, 569, 573, 584, 596, 601, 640, 666, 689, 710, 727, 741, 773, 775, 781, 787, 789, 791, 795, 797). In many of her treatment notes, Ms. Anderson noted that Plaintiff was either "ready for the meeting," "engaged," "focused," "attentive," or some combination thereof. (See, e.g., 476, 575, 596, 573, 727, 778, 781, 784, 788, 790, 791, 807). On several occasions, Ms. Anderson notated Plaintiff's attire demonstrating that Defendant was appropriately dressed. (See, e.g., Tr. 444, 448, 466, 500, 508, 524, 530, 536, 559, 563, 575, 612, 614, 627, 640, 729, 787).

Ms. Anderson's November 11, 2017, opinion fails to provide any explanation regarding the contradiction between her unremarkable treatment notes and the debilitating nature of her November 11, 2017, opinion.[7] In fact, Ms. Anderson's November 11, 2017, opinion was rendered on a check-box form without any attached explanation or objective medical findings. (See, Tr. 915–918).

As the ALJ noted, the debilitating nature of Ms. Anderson's opinions is also contradicted by Plaintiff's own self-reported PHQ-9 scores. As explained above, a PHQ-9 score is based on a self-administered patient questioner which the patient completes prior to an appointment with a medical professional. John B. H., 2021 WL 1192930, at *9 n.5. Plaintiff completed such a questioner on several occasions with four tests being near the time of Ms. Anderson's November 11, 2017, opinion. Those four tests resulted in the following scores: a score of 12 on March 16, 2017; a score of 10 on March 23, 2017; a score of 13 on May 25, 2017; and a score of 14 on September 8, 2017. (Tr. 460, 903). Each of these scores falls in the range of "10–14 indicating

---

[7] This contradiction is especially prevalent in the dichotomy between Ms. Anderson's opinion that Plaintiff "always has bad days" with no good days and the numerous observations by Ms. Anderson throughout her treatments notes that Plaintiff was in a "good" or "pleasant" mood.

moderate depression." Id. This self-reported "moderate depression" is inconsistent with the debilitating nature of Ms. Anderson's opinion.

Ms. Anderson's opinion is entirely conclusory, and it is contradicting by her own treatment notes, as well as, Plaintiff's self-reported PHQ-9 scores. (See, Tr. 915–918). A review of the opinion itself shows that it "consist[s] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. [It] cite[s] no medical evidence and provide[s] little to no elaboration, and so [it] possess[es] 'little evidentiary value.'" Thomas, 881 F.3d at 675; see, Toland, 761 F.3d at 937; Wildman, 596 F.3d at 967; Holmstrom, 270 F.3d at 721. Although Ms. Anderson lists some of Plaintiff's symptoms on the check-box form, she fails to provide any explanation as to how those symptoms rendered Plaintiff unable to work on a regular basis. The conclusory, unsupported, and contradictory nature of Ms. Anderson's November 11, 2017, opinion, further undermines the persuasiveness and evidentiary value of Ms. Anderson's November 11, 2017, opinion. See, e.g., Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639; Wildman, 596 F.3d at 967; Piepgras, 76 F.3d at 236; Grindley, 9 F.4th at 632; Kraus, 988 F.3d at 1025; Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011).

Moreover, Ms. Anderson's opinion, like her treatment notes, appears to be based, in large part, merely on Plaintiff's subjective reports. Ms. Anderson's treatment notes lack any objective medical findings or mental health testing. This further undermines the persuasiveness and evidentiary value of Ms. Anderson's November 11, 2017, opinion. See, e.g., Brian, 2019 WL 4082948, at *9; Kirby, 500 F.3d at 709.

Therefore, this Court finds that the ALJ's decision that Ms. Anderson's November 11, 2017, opinion was "not persuasive" was supported by substantial evidence in the record as a whole.

### 3. Kathlyn Bergeron, APRN-CNP

On October 26, 2018, Kathlyn Bergeron, APRN-CNP, who had been meeting with Plaintiff to oversee Plaintiff's outpatient psychotropic medication management, partially completed a Mental Medical Source Statement. (Tr. 920–923). In her October 26, 2018, Mental Medical Source Statement, CNP Bergeron opined that Plaintiff's prognosis was "[f]air with ongoing therapy and medication" management. (Tr. 920). CNP Bergeron wrote that Plaintiff tolerated her medications "well," identified her medications as "helpful," and denied any side effects. (Tr. 920). In the portion of the check-box form seeking information regarding Plaintiff's limitations related to work activities, CNP Bergeron simply wrote "defer." (Tr. 921). Later in the form, CNP Bergeron wrote that she had "not been able to observe [Plaintiff] in a work/employment environment," and CNP Bergeron suggested an "objective assessment" in a "rehab setting." (Tr. 922). When asked whether Plaintiff's limitations were likely to produce "good" and "bad" days, CNP Bergeron wrote that Plaintiff "identifies good day[s] and bad days." (Tr. 922). CNP Bergeron opined that Plaintiff would be absent approximately two days per month "to attend ongoing therapy and medication follow-up" appointments. (Tr. 922). CNP Bergeron posited that Plaintiff had a minimal capacity to adapt to changes in the environment or demands that are not already part of her daily life. (Tr. 922).

In the present case, the ALJ discussed the relevant portions of CNP Bergeron's October 26, 2018, opinion, but the ALJ found said opinion to be "not persuasive." (Tr. 38–39). The ALJ is required to explain only how the supportability and consistency factors were considered

regarding CNP Bergeron's October 26, 2018, opinion, and on the record now before the Court, the ALJ did so. Referencing and discussing specific portions of the record throughout her decision and summarizing those discussion in relation to CNP Bergeron's opinion, the ALJ found that CNP Bergeron's October 26, 2018, opinion was not "consistent with [Plaintiff's] own reports of functioning as reflected in her PHQ-9 scores" and "not generally consistent with the evidence overall which is significant for largely unremarkable clinical findings across multiple mental status examinations and an entirely outpatient course of mental health treatment." (Tr. 39). The ALJ's findings here are well-supported in the record.

The examples already discussed above regarding LICSW Werner's opinion and Ms. Anderson's opinion are equally applicable here. For all the reasons already discussed above in relation to LICSW Werner's opinion and Ms. Anderson's opinion, Plaintiff's conservative course of treatment; her failure to adhere to recommended medications and treatment; her self-reported improvement when compliant with her medication; and her contradictory, self-reported PHQ-9 scores all indicate a level of debilitation less than the high level of functional limitations opined by CNP Bergeron, and these same issues all undermine the persuasiveness of CNP Bergeron's October 26, 2018, opinion. See, e.g., Hamman, 680 F. App'x at 495; Milam, 794 F.3d at 985; Bauer, 734 F. Supp. 2d at 806; LaCanne, 2001 WL 1640124, at *2; Wagner, 499 F.3d at 851; Guillias, 393 F.3d at 802; Wildman, 596 F.3d at 964; Owen, 551 F.3d at 800; Kelley, 372 F.3d at 961; Estes, 275 F.3d at 725; Turpin, 750 F.3d at 993.

In addition to the above discussion regarding the conservative nature of Plaintiff's course of treatment, Plaintiff's meetings with CNP Bergeron were also "largely unremarkable" in contrast to the debilitating nature of CNP Bergeron's October 26, 2018, opinion. For example, at each of her meetings with Plaintiff, CNP Bergeron noted that Plaintiff was oriented, well

groomed, and cooperative with "normal" eye contact, and she observed Plaintiff as having a "normal" or "appropriate" affect. (Tr. 458, 483, 513, 557, 566, 580, 594, 623, 863, 880, 901, 1264, 1279, 1365, 1379, 1418, 1442, 1544, 1567, 1592). At each of these meetings, CNP Bergeron also described Plaintiff's attention span as "concentrated" or "focused" with her "insight/judgment," "recent memory," and "remote memory" all being intact. (Tr. 458, 483, 513, 557, 566, 580, 594, 623, 863, 880, 901, 1264, 1279, 1365, 1379, 1418, 1442, 1544, 1567, 1592). On many occasions, CNP Bergeron reported Plaintiff's mood as "normal." (Tr. 483, 901, 1345, 1365, 1418, 1442, 1544, 1567, 1592). On some occasions, Plaintiff reported herself as doing "pretty well" or "pretty good." (Tr. 456, 481, 565, 579, 899, 1343, 1363, 1413).

CNP Bergeron's October 26, 2018, opinion fails to provide any explanation regarding the contradiction between her unremarkable treatment notes and the debilitating nature of her October 26, 2018, opinion. In fact, CNP Bergeron's October 26, 2018, opinion was rendered on a check-box form without any attached explanation or objective medical findings and CNP Bergeron declined to answer several of the questions, including all of the questions related to Plaintiff's limitations in a work environment. (See, Tr. 920–923).

CNP Bergeron's October 26, 2018, opinion is entirely conclusory, and based, in large part, on Plaintiff's subjective reports. (See, Tr. 920–923). CNP Bergeron's October 26, 2018, opinion has "little evidentiary value.'" Thomas, 881 F.3d at 675; see, Toland, 761 F.3d at 937; Wildman, 596 F.3d at 967; Holmstrom, 270 F.3d at 721. Moreover, CNP Bergeron's October 26, 2018, opinion, like her treatment notes, lacks any objective medical findings or mental health testing. Each of these considerations undermines the persuasiveness and evidentiary value of CNP Bergeron's opinion. Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639; Wildman, 596 F.3d

at 967; Piepgras, 76 F.3d at 236; Grindley, 9 F.4th at 632; Kraus, 988 F.3d at 1025; Martise, 641 F.3d at 925; Brian, 2019 WL 4082948, at *9; Kirby, 500 F.3d at 709.[8]

Therefore, this Court finds that the ALJ's decision that CNP Bergeron's October 26, 2018, opinion was "not persuasive" was supported by substantial evidence in the record as a whole.

### 4. State Agency Consultants

Plaintiff also takes issue with the ALJ's consideration of the State Agency Consultants' opinions and findings. (See, Plf.'s Mem. [Docket No. 27] at 16–17). Plaintiff does not actually challenge the level of persuasiveness the ALJ assigned the State Agency Consultants' opinions. (See, Id.). Instead, Plaintiff argues that although the ALJ noted that the State Agency Consultants initially found no severe mental impairments, "the ALJ failed to acknowledge that the State Agency did find severe mental impairments beginning December 1, 2014" which resulted in State Agency Consultants' opinions that Plaintiff be "limited to brief, infrequent, and *superficial* contact with coworkers, supervisors, and the general public." (Id. at 16, 18) (emphasis in original).

On September 29, 2017, as part of initial consideration of Plaintiff's application for disability and disability benefits, State Agency Consultant Thomas L. Kuhlman, Ph.D., L.P., opined that beginning December 1, 2014, Plaintiff had certain severe medical impairments. (Tr. 104–108). In making this determination and determining Plaintiff's RFC, Dr. Kuhlman opined that Plaintiff should be "[r]estricted to brief, infrequent, and superficial contacts with coworker, supervisors, and the general public." (Tr. 108). Using Dr. Kuhlman's opined RFC determination,

---

[8] Even where CNP Bergeron lists some of Plaintiff's symptoms on the check-box form she fails to provide any explanation as to how those symptoms rendered Plaintiff unable to work on a regular basis. This further undermines the persuasiveness and evidentiary value of CNP Bergeron's October 26, 2018, opinion. Kraus, 988 F.3d at 1025.

the Social Security Administration denied Plaintiff's application for benefits finding that she was not disabled because she could perform "unskilled work." (Tr. 109–110).

Plaintiff sought reconsideration of the decision denying her application for benefits. As part of the reconsideration process, State Agency Consultant Mary X. Sullivan, Ph.D., reviewed Plaintiff's application for benefits and medical records. In determining Plaintiff's RFC at the reconsideration level, Dr. Sullivan opined that Plaintiff should be "[r]estricted to brief, infrequent, and superficial contacts with coworker, supervisors, and the general public." (Tr. 139). Based on the RFC finding by Dr. Sullivan, the Social Security Administration again denied Plaintiff's application for benefits finding that Plaintiff could perform her past relevant work as a "Packager, Machine" which is unskilled in nature. (Tr. 141).

In discussing the State Agency Consultants' opinions, the ALJ wrote that she had "considered the opinions of the non-examining state agency psychological consultants, to the effect that the claimant was subject to no severe mental impairments or severe combination of mental impairments." (Tr. 39). The ALJ found these opinions to be "not persuasive" reasoning that they were "not generally consistent with the evidence overall, which documents [Plaintiff's] receipt of outpatient mental health treatment services and low-level community-based services for ADHD, depression, and a personality disorder." (Tr. 39).

As noted above, Plaintiff does not challenge the ALJ's decision to find "not persuasive" the State Agency Consultants' opinions that Plaintiff had no severe impairments. Instead, Plaintiff contends that the ALJ committed reversible error by failing to discuss the State Agency Consultants' opinions that Plaintiff should be "[r]estricted to brief, infrequent, and superficial contacts with coworker, supervisors, and the general public" because of her severe impairments beginning December 1, 2014. (See, Plf.'s Mem. [Docket No. 27]).

The ALJ did not specifically discuss the State Agency Consultants' opinions that Plaintiff should be "[r]estricted to brief, infrequent, and superficial contacts with coworker, supervisors, and the general public." However, an ALJ is not, as Plaintiff here implicitly argues, required to discuss every specific piece of evidence or specific portion of a proffered opinion. See, gen., Renstrom, 680 F.3d at 1065; Craig, 212 F.3d at 436; Black, 143 F.3d at 386; Miller, 8 F.3d at 613. Further, the Eighth Circuit has held that the mere fact that an ALJ failed to mention some specific evidence does not necessarily indicate that the ALJ failed to consider that evidence. Black, 143 F.3d at 386; Montgomery, 69 F.3d at 275.

The ALJ is required to consider all medical opinion evidence and prior administrative medical finding, such as the aforementioned opinions of the State Agency Consultants. See, e.g., 20 C.F.R. § 1520c(b). The Court cannot determine from the ALJ's decision whether the ALJ considered the State Agency Consultants' opinion that Plaintiff be limited to brief, infrequent, and superficial contacts with coworker, supervisors, and the general public. However, even assuming solely for the sake of argument that the ALJ erred by failing to consider the specific portion of the State Agency Consultants' opinions as highlighted by Plaintiff, the Court finds that such error was harmless.

It is well settled that harmless error review is applicable to social security administrative appeals, Shinseki v. Sanders, 556 U.S. 396, 409 (2009), and that a harmless error does not warrant remand. Byes v. Astrue, 687 F.3d 913, 917–18 (8th Cir. 2012). It is Plaintiff who bears the burden of demonstrating harm. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). To demonstrate such harm, Plaintiff must "explain[] . . . how the . . . error to which [s]he points could have made any difference." Id. at 413. To do so, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." Byes v. Astrue, 687

F.3d 913, 917 (8th Cir. 2012) (citing Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003)).

In the present case, Plaintiff has failed to demonstrate that the ALJ would have decided differently if she had specifically discussed the portion of the State Agency Consultants' opinions highlighted by Plaintiff. In fact, the record now before the Court contains several indications that the ALJ would have reached the same decision even if she had specifically discussed the portion of the State Agency Consultants' opinions highlighted by Plaintiff. Most notable, is the fact that the disability determination and reconsideration disability determination—based upon the specific State Agency Consultants' opinions highlighted by Plaintiff—both resulted in a determination that Plaintiff was not disabled.

Specifically, the initial consideration of Plaintiff's disability application resulted in a disability determination, based on Dr. Kuhlman's opinion as highlighted by Plaintiff, finding that Plaintiff was able to perform unskilled work which supports the ALJ's decision that Plaintiff is able to complete past relevant work as a packaging machine operator—an unskilled position. Even more specifically, the reconsideration of Plaintiff's disability application resulted in a disability determination, based on Dr. Sullivan's opinion as highlight by Plaintiff, finding that Plaintiff was able to perform her past relevant work—the same conclusion reached by the ALJ.

Even assuming solely for the sake of argument that the ALJ erred in failing to consider the specific portion of the State Agency Consultants' opinion as highlighted by Plaintiff, it was a harmless error because it would not have caused the ALJ to reach a different decision, and Plaintiff "would have received the same 'not disabled' determination." Tasha W. v. Berryhill, No. 17-cv-4933 (KMM), 2019 WL 1170666, at *4 (D. Minn. Mar. 13, 2019); see, Byes, 687

30

F.3d at 917; Hensley, 352 F.3d at 357; Bridgette W. v. Kijakazi, 20-cv-201 (PJS/BRT), 2021 WL

3206847, at *2 (D. Minn. July 29, 2021).

### B. Credibility Determination

Plaintiff's next argues that the ALJ's credibility determination was defective to the level

of requiring remand. (See, Plf.'s Mem. [Docket No. 27] at 21–24). Specifically, Plaintiff

contends that ALJ committed reversible error by failing to specifically mention Plaintiff's

"exemplary work history, demonstrating a virtually uninterrupted employment from 1994, when

she was 15-years old, through her alleged onset of disability in 2013." (Id. at 22).

In making a credibility determination, an ALJ is required to consider the following

factors:

> (1) the claimant's daily activities; (2) the duration, intensity, and frequency of
> pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness,
> and side effects of medication; (5) any functional restrictions; (6) the claimant's
> work history; and (7) the absence of objective medical evidence to support the
> claimant's complaints.

Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011). The ALJ is not, however, required to

discuss each of these "Polaski factors." Id. (citing Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir.

2005)). The Eighth Circuit Court of Appeals has explained that Courts should "defer to the

ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good

reason for doing so.'" Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quoting Wildman v.

Astrue, 596 F.3d 959, 968 (8th Cir. 2010)). An example of one such good reason would be

allegations which are inconsistent with the record as a whole. See, e.g., Buckner, 646 F.3d at

558; Goff, 421 F.3d at 791.

In the present case, the ALJ specifically found that Plaintiff's allegations concerning the

intensity, persistence, and functionally limiting effects of her symptoms were not credible

because they were inconsistent with the record as a whole. Although the ALJ did not specifically identify the <u>Polaski</u> factors by name, it is evident from the record, and Plaintiff does not dispute, that the ALJ considered the following <u>Polaski</u> factors: Plaintiff's daily activities; the duration, intensity, and frequency of Plaintiff's pain; the effectiveness of medication; and the absence of objective medical evidence to support Plaintiff's complaints. The ALJ did not err by failing to specifically discuss Plaintiff's fifteen-year work history.

Moreover, the Court's review of the ALJ's decision finds that although the ALJ did not specifically discuss Plaintiff's fifteen-year work history, the ALJ was aware of and considered said work history. (<u>See</u>, Tr. 24, 40). In reaching her decision that Plaintiff had not engaged in substantial gainful employment since the alleged onset date, the ALJ considered and cited to Plaintiff's Certified Earning Records, which contain the entirety of Plaintiff's paid employment history. (Tr. 24). Further, in discussing Plaintiff's past relevant work, the ALJ discussed and cited to Plaintiff's Work History Report, which contains Plaintiff's entire work history as reported by Plaintiff. (Tr. 40).

On the record now before it and pursuant to the standard of review set forth by the Eighth Circuit Court of Appeals, the Court finds no error in the ALJ's consideration of the relevant <u>Polaski</u> factors. The Court finds that the ALJ sufficiently satisfied her obligation regarding consideration of the <u>Polaski</u> factors. <u>See, e.g.</u>, <u>Buckner</u>, 646 F.3d at 558; <u>Goff</u>, 421 F.3d at 791.

## C. Generalized Substantial Evidence Arguments

Throughout her moving papers, Plaintiff makes generalized references implying that the ALJ's decision as a whole is unsupported by substantial evidence. In support of these generalized assertions, however, Plaintiff only references her summary of those portions of the

evidence from the record which she believes could support a finding of disability. The Court finds unpersuasive Plaintiff's argument based on a lack of substantial evidence.

As the Court has already explained, to the extent that Plaintiff argues that there was substantial evidence in the record that might also have supported a finding of disability, the Court may <u>not</u> reverse the ALJ simply because substantial evidence may support an opposite conclusion. <u>See</u>, <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, <u>see</u>, <u>Woolf</u>, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "<u>must</u> affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" <u>See</u>, <u>Milam</u>, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court. In support of these generalized assertions, Plaintiff merely highlights selective evidence favorable to her position, and she asks this Court to reevaluate said evidence to reach a conclusion different than the one reached by the ALJ when she considered the same record. This the Court cannot do. <u>See</u>, <u>Milam</u>, 794 F.3d at 983.

## V. Conclusion

The Court's review of the record indicates that the ALJ's Residual Functional Capacity decision, as well as, the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period, were both supported by substantial evidence in the record as a whole. Further, on the Court's review of the record as a whole, the ALJ's decision to discount Plaintiff's subjective complaints and the ALJ's decision that Plaintiff could perform her past relevant work within the RFC limitations were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.      Plaintiff's Motion for Summary Judgment, [Docket No. 26], be **DENIED**; and

2.      Defendant's Motion for Summary Judgment, [Docket No. 29], be **GRANTED**.

Dated:  July 27, 2022                                           s/Leo I. Brisbois
                                                                Hon. Leo I. Brisbois
                                                                United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).